FILED

2015 Sep-22  AM 08:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| WARREN MANUFACTURING INCORPORATED, WARREN TRUCK AND TRAILER INCORPORATED, WARREN INCORPORATED, WARREN TRUCK AND TRAILER LLC, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VOLKSWAGEN GROUP OF AMERICA, INC., <br><br> Defendant. | No. <br><br> **COMPLAINT** <br> **CLASS ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

## I.      INTRODUCTION

Plaintiffs Warren Manufacturing Incorporated, Warren Truck and Trailer Incorporated (together with Warren Manufacturing Incorporated, the "Alabama Plaintiffs"), Warren Incorporated (the "Mississippi Plaintiff"), Warren Truck and Trailer LLC (the "Texas Plaintiff") (collectively, the "Plaintiffs"), individually and on behalf of all others similarly situated ("Class members"), allege the following against Volkswagen Group of America, Inc. ("Defendant" or "Volkswagen"), based where applicable on personal knowledge, information and belief, and the investigation of counsel. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

## II.      NATURE OF THE ACTION

1.      This action concerns a global auto manufacturer's intentional deception of well-meaning, conscientious consumers and regulators, and its misguided plan to profit by gaming the system rather than playing by the rules.

2.      This nationwide class action concerns the intentional installation of so-called defeat devices on over 482,000 diesel Volkswagen and Audi vehicles sold in the United States since 2009 ("Defeat Device Vehicles"). Defendant marketed those vehicles as environmentally-friendly cars that possessed the holy grail of automotive qualities: extremely high fuel efficiency and performance, with very low emissions. Although Defendant successfully marketed these expensive cars as "green," their environmentally-friendly representations were a sham. Defendant did not actually make cars with those desirable and advertised attributes.

3.      According to the U.S. Environmental Protection Agency (EPA), Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-

2015 VW Passat; and MY 2009-2015 Audi A3. The California Air Resources Board is currently investigating whether the Defendant installed the device in other cars as well, so additional vehicle models and model years may be added to this list when new facts are discovered.

4.     Instead of delivering on their promise of extremely high fuel mileage coupled with low emissions, Defendant devised a way to make it *appear* that their cars did what they said they would when, in fact, they did not. Put simply, Defendant lied.

5.     The defeat devices Defendant designed and installed work by switching on the full emissions control systems in Defendant's cars *only* when the car is undergoing periodic emissions testing. The technology needed to control emissions from Defendant's cars to meet state and federal emissions regulations reduces their performance, limiting acceleration, torque, and fuel efficiency.

6.     To hide this, the defeat device simply shuts off most of the emissions control systems in the car once the car has completed its emissions test. While that might have made the car more fun to drive, it resulted in Defendant's cars sending up to 40 times as much pollution into the environment as is allowed under the Clean Air Act and state regulations.

7.     Those violations are explained in a Notice of Violation the EPA issued to Defendant, a copy of which are attached to this Class Action Complaint as Exhibit A.

### III.     PARTIES

8.     Plaintiff Warren Manufacturing Incorporated is a business incorporated in Jefferson County, Alabama with its principal place of business located in Birmingham, Alabama.

9.     Plaintiff Warren Truck and Trailer Incorporated is a business incorporated in Jefferson County, Alabama with its principal place of business located in Birmingham, Alabama. Plaintiff Warren Truck and Trailer Incorporated is a licensed used car dealer.

10.    Plaintiff Warren Incorporated is a business incorporated in Mississippi with its principal place of business located in Flowood, Mississippi.

11.    Plaintiff Warren Truck and Trailer LLC is a limited liability company with its principal place of business located in Talco, Texas.

12.    Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in every U.S. state and the District of Columbia, and is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Volkswagen is therefore a citizen of New Jersey and Virginia. *See* 28 U.S.C. § 1332(d)(10).

13.    At all relevant times, Volkswagen manufactured, distributed, sold, leased, and warranted the Defeat Device Vehicles under the Volkswagen and Audi brand names throughout all of the United States, and including but not limited to Alabama, Mississippi, and Texas. Volkswagen and/or its agents designed the CleanDiesel engines and engine control systems in the Defeat Device Vehicles, including the "defeat device." Volkswagen also developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Defeat Device Vehicles.

## IV.    ANY OTHERWISE-APPLICABLE STATUTES OF LIMITATION ARE TOLLED

14.    The tolling doctrine was made for cases of concealment like this one. For the following reasons, any otherwise-applicable statutes of limitation have been tolled by the discovery rule with respect to all claims.

15.    Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiffs and members of the proposed Class could not have discovered that

Volkswagen was concealing and misrepresenting the true emissions levels of its vehicles, including but not limited to its use of defeat devices.

16.     As reported in the *New York Times* on September 19, 2015, the International Council on Clean Transportation, a research group, first noticed the difference between Volkswagen's emissions in testing laboratories and in normal use on the road. The International Council on Clean Transportation brought the defeat device issue to the attention of the EPA. The EPA, in turn, conducted further tests on the vehicles, and ultimately uncovered the unlawful use of the defeat device software. Thus, Volkswagen's deception with respect to its CleanDiesel engines, engine control systems, and "defeat devices" was painstakingly concealed from consumers and regulators alike.

17.     Plaintiffs and the other Class members could not reasonably discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen intentionally failed to report information within its knowledge to federal and state authorities, its dealerships, or consumers.

18.     Likewise, a reasonable and diligent investigation could not have disclosed that Volkswagen had information in its sole possession about the existence of its sophisticated emissions deception and that it concealed that information, which was discovered by Plaintiffs immediately before this action was filed. Plaintiffs and other Class members could not have previously learned that Volkswagen valued profits over compliance with applicable federal and state emissions and consumer law.

19.     Throughout the relevant time period, all applicable statutes of limitation have been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged in this Complaint.

20. Instead of disclosing its emissions deception, or that the emissions from the Defeat Device Vehicles were far worse than represented, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

21. Volkswagen was under a continuous duty to disclose to Plaintiffs and the other Class members the facts that it knew about the emissions from Defeat Device Vehicles, and of those vehicles' failure to comply with federal and state laws.

22. Although it had the duty throughout the relevant period to disclose to Plaintiffs and Class members that it had engaged in the deception described in this Complaint, Volkswagen chose to evade federal and state emissions and clean air standards with respect to the Defeat Device Vehicles, and it intentionally misrepresented its blatant and deceptive lack of compliance with state law regulating vehicle emissions and clean air.

23. Thus, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## V.     JURISDICTION AND VENUE

24. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

25. This Court has personal jurisdiction over Defendant because it conducts business in Alabama, and has sufficient minimum contacts with Alabama. Defendant is also registered with the Alabama Secretary of State as entity ID number 888-936 and has various dealerships in Alabama, including without limitation Serra Volkswagen and Royal Volkswagen.

6

26.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendant has caused harm to Class members residing in this District.

## VI.    FACTS

27.     Defendant intentionally designed and sold cars that misled consumers and regulators about the amount of pollution those cars created and the fuel efficiency they produced. Despite touting themselves as an environmentally conscientious company that produced thoughtful cars for people who cared about the environment, Defendant sold expensive cars that produced pollution at orders of a magnitude above federal and state regulations, and then intentionally and knowingly hid the truth about those cars.

### A.    Defendant Touts their Diesel Vehicles as Being Fuel Efficient and Good for the Environment

28.     For years, Volkswagen has advertised its diesel vehicles as low-emission, fuel-efficient cars. Indeed, this marketing message is at the core of its image in the United States. It has been a successful advertising campaign; Volkswagen has become the largest seller of diesel passenger vehicles in the United States.



29.     Defendant's success is based in large part on promoting their diesel cars as "clean" and "green" vehicles. Indeed, being both highly efficient and "clean" are the centerpieces of Defendant's diesel engine marketing campaign. "CleanDiesel" is in the very name of the vehicles about which Defendant lied.

30.     Defendant's apparent concern for the environment is evident beyond just the model names and purported attributes of their vehicles. For example, on the "Environment" page of its website, Volkswagen Group of America states that it takes "environmental responsibility very seriously. When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."

31.     Defendant bolsters its apparent environmental bone fides by trumpeting the fact that the Audi A3 TDI and VW Jetta TDI were named the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively.

32.     Defendant also launched a "Think Blue" program, which they explained is part of their policy of being "more responsible on the road and more environmentally conscious—not just in our cars."

33.     Beyond merely advertising, Defendant supported and directed a website to promote its "clean" diesel technology, www.clearlybetterdiesel.org, which says the technology reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner."

34.     Defendant goes for far as to use the tagline "Truth in Engineering" to promote its Audi brand:



35.      Unfortunately for consumers who bought Defendant's cars and for people who breathe the air into which Defendant's cars emit extraordinary amounts of pollutants, Defendants engineering was far from "truthful." Defendant has designed and sold cars that emit pollutants at breath-taking levels, failing state and federal environmental regulations by incredible margins.

**B.      Volkswagen Intentionally Hid the Excessive and Illegal Levels of Pollution Emitted from its Cars.**

36.      Contrary to Volkswagen's self-promotion as a "green" company, its diesel cars are unhealthy and unlawful.

37.      On September 18, 2015, the EPA issued a Notice of Violation ("NOV"). The NOV explains that Defendant has installed sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant in the United States that detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. At all other times that the vehicle is running, however, the emissions controls are deactivated, meaning that pollution is freely released into the environment at levels that exceed those allowed by federal and state clean air regulators. This software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

38.      Most modern engines, including Volkswagen's "CleanDiesel" engines, use computerized engine control systems to monitor sensors throughout a car's engine and exhaust systems and control operation of the car's systems to ensure optimal performance and efficiency.

These functions can include controlling fuel injection, valve and ignition timing, and, as in Volkswagen's "CleanDiesel" engines, operating the engine's turbocharger. The engine control computer can, for example, ensure that the air-to-fuel mixture is correct based on sensor readings such as throttle position, amount of air flowing into the engine, and engine temperature.

39.     These engine control computers also receive data from sensors in the car's exhaust system that measure the amounts of chemical substances included in the car's exhaust. That data provides a measure of the engine's operation and efficiency, and is thus used by the engine control computer in operating the car's systems to ensure the desired performance and efficiency.

40.     Because modern cars include these sophisticated computers and sensors throughout the car's systems, emissions testing sometimes uses a car's existing sensors to measure the presence of pollutants and track compliance with EPA and state emissions standards. Emissions testing stations plug a diagnostic device into the car's on-board diagnostics ("OBD II") port and use the car's exhaust sensors during the testing procedure to measure the substances emitted. Some states, instead of or in addition to an OBD II diagnostic device, use a measurement probe inserted into the car's exhaust pipe to measure the chemicals emitted.

41.     Volkswagen programmed the engine control computers in the Defeat Device Vehicles with software that detects when the cars are undergoing emissions testing, and then operates the car's engine and exhaust systems to ensure that emissions comply with EPA pollutant standards. When the car is not being emissions tested—that is, under the vast majority of operating conditions—the engine control systems operate the vehicle in a manner that does not comply with EPA emissions requirements.

42.     In short, this software allows Defendant's diesel vehicles to meet emissions

standards in labs or state testing stations, while permitting the vehicles to emit nitrogen oxides (NOx) at *up to 40 times the standard* allowed under United States laws and regulations during the normal operation of the vehicles.

43.     NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory illness are at an acute risk of health effects from these pollutants.

44.     The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA-issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than were certified to the EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal laws.

45.     Defendant has now admitted to cheating on U.S. emissions testing. *See* http://www.bloomberg.com/news/articles/2015-09-18/epa-says-volkswagon-software-circumvented-car-emissions-testing, last accessed on November 21, 2015.

**C.     Defendant Has Profited Handsomely From Their Diesel Vehicles.**

46.     Defendant charges substantial premiums for the Defeat Device Vehicles. For

example, for the 2015 Volkswagen Jetta, the base S model with a gasoline engine has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The CleanDiesel premium for the highest trim Jetta models with a comparable gasoline engine is substantially higher: The Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a 31% premium.

47.     These premiums occur across all of the vehicles in which Defendant installed its "defeat device" for emissions testing. The table below sets forth the price premium for each comparable base, mid-level, and top-line trim for each affected model:

**CleanDiesel Price Premiums**

| Model | Base | Mid-level | Top-line |
|-------|------|-----------|----------|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golg | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

**D.     Volkswagen's Illegal Actions Have Caused Class Members Significant Harm.**

48.     Although the EPA has ordered Defendant to recall the Defeat Device Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation, purchasers of the Defeat Device Vehicles have and will continue to suffer significant harm. First, Volkswagen will not be able to make the Defeat Device Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. As a result, even if Volkswagen is able to make Class members' Defeat Device Vehicles EPA compliant, Class members will nonetheless suffer actual

harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.

49.    Second, this will necessarily result in a diminution in value of every Defeat Device Vehicle. Not only did Class members pay too much for cars now worth substantially less, but they will end up paying more to fuel their less efficient cars over the years they own their vehicles.

50.    As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Defeat Device Vehicles emit 40 times the allowed levels, owners and/or lessees of the Defeat Device Vehicles have suffered losses in money and/or property.

51.    Had Plaintiffs and Class members known of the "defeat device" at the time they purchased or leased their Defeat Device Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did. Moreover, when and if Volkswagen recalls the Defeat Device Vehicles and degrades the CleanDiesel engine performance in order to make the Defeat Device Vehicles compliant with EPA standards, Plaintiffs and Class members will be required to spend more on fuel and will not benefit from the performance qualities of their vehicles as advertised. Moreover, Defeat Device Vehicles will necessarily be worth less in the used marketplace because of their decrease in performance and efficiency, which means that owners of Defeat Device Vehicles will not be able to recoup nearly as much value in the future.

52.    Volkswagen's deliberate strategy to value profit over the truth, human health, and the environment, has caused serious harm to consumers nationwide.

53.    According to media sources, Defendant's CEO, Martin Winterkorn, said in a

statement that he was "deeply sorry that we have broken the trust of our customers and the public," and that Defendant would be suspending sales of some 2015 and 2016 vehicles with 2.0 liter diesel engines. While Defendant's candor about its breach of trust is notable, it cannot compensate Plaintiffs and Class members for the damages they have incurred.

## VII.   PLAINTIFFS' FACTS

54.   Plaintiff Warren Manufacturing Incorporated, in 2015, purchased one 2014 Jetta Diesel for use in its business by its sales fleet due to its advertised superior power, efficiency, and emissions.   The purchase was made at Royal Volkswagen in Birmingham, Alabama. Warren Manufacturing Inc. would not have paid a premium for its Jetta if it had known the truth about its fuel efficiency and emissions, and it would not have purchased its Jetta if it knew it included an unlawful defeat device. It feels that Volkswagen has lied to it.   Warren Manufacturing Inc., intends to resell its car in the future, and is very concerned about its resale value going forward, its increased fuel costs, and potential lost good will and rapport with certain customers who value eco-friendly sale's vehicles.

55.   Plaintiff Warren Manufacturing Incorporated purchased a 2014 Passat in 2014 for use in its business by its sales fleet due to its advertised superior power, efficiency, and emissions.  The purchase was made at Hiley Volkswagen in Huntsville, Alabama.  Warren Manufacturing Inc. would not have paid a premium for its Passat if it had known the truth about its fuel efficiency and emissions, and it would not have purchased its Passat if it knew it included an unlawful defeat device.  It feels that Volkswagen has lied to it.  Warren Manufacturing Inc., intends to resell its car in the future, and is very concerned about its resale value going forward, its increased fuel costs, and potential lost good will and rapport with certain customers who value eco-friendly sale's vehicles.

56.     Plaintiff Warren Truck and Trailer Incorporated, in 2015, purchased one 2014 Jetta Diesel for use in its business by its sales fleet due to its advertised superior power, efficiency, and emissions.   The purchase was made at Royal Volkswagen in Birmingham, Alabama.  Warren Truck and Trailer Incorporated would not have paid a premium for its Jetta if it had known the truth about its fuel efficiency and emissions, and it would not have purchased its Jetta if it knew it included an unlawful defeat device.  It feels that Volkswagen has lied to it. Warren Truck and Trailer Incorporated intends to resell its car in the future, and is very concerned about its resale value going forward, its increased fuel costs, and potential lost good will and rapport with certain customers who value eco-friendly sale's vehicles.

57.     Additionally, as a used car dealer, Warren Truck and Trailer Incorporated purchased the vehicle intending to drive it for a short amount of time and then sell it on the open market.  As the market for its Jetta has been significantly reduced due to it now failing emissions testing and/or seriously reduced performance, Warren Truck and Trailer is damaged and will suffer losses when it goes to sell the Jetta.

58.     Plaintiff Warren Incorporated, in 2015, purchased one 2014 Jetta Diesel for use in its business by its sales fleet due to its advertised superior power, efficiency, and emissions. The purchase was made at Volkswagen Jackson in Jackson, Mississippi. Warren Incorporated would not have paid a premium for its Jetta if it had known the truth about its fuel efficiency and emissions, and it would not have purchased its Jetta if it knew it included an unlawful defeat device.  It feels that Volkswagen has lied to it.  Warren Incorporated intends to resell its car in the future, and is very concerned about its resale value going forward, its increased fuel costs, and potential lost good will and rapport with certain customers who value eco-friendly sale's vehicles.

15

59.     Warren Truck and Trailer LLC., in 2014, purchased a 2013 Jetta for use in its business by its sales fleet due to its advertised superior power, efficiency, and emissions.  The purchase was made at Randall Reed in McKinney, Texas. Warren Truck and Trailer LLC would not have paid a premium for its Jetta if it had known the truth about its fuel efficiency and emissions, and it would not have purchased its Jetta if it knew it included an unlawful defeat device.  It feels that Volkswagen has lied to it.  Warren Truck and Trailer LLC intends to resell its car in the future, and is very concerned about its resale value going forward, its increased fuel costs, and potential lost good will and rapport with certain customers who value eco-friendly sale's vehicles.

## VIII.   CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Classes:

> Plaintiffs, and each of them together and separately, seek to represent all United States corporations, companies, trusts, persons, and businesses of any type and/or formation who are current or former owners and/or lessees of, or that otherwise acquired, *for fleet purposes*, a "Defeat Device Vehicle." Defeat Device Vehicles include, without limitation: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 and any other vehicle powered by Volkswagen's 2.0 liter four-cylinder engine (the "Fleet Class").

> Plaintiffs Warren Truck and Trailer Incorporated seeks to represent all United States corporations, companies, trusts, persons, and businesses of any type and/or formation who are current or former owners and/or lessees of, or that otherwise acquired, *for dealer purposes or for the purpose of otherwise selling*, a "Defeat Device Vehicle." Defeat Device Vehicles include, without limitation: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3 and any other vehicle powered by Volkswagen's 2.0 liter four-cylinder engine (the "Dealer Class").

Plaintiffs Warren Truck and Trailer Incorporated seeks to represent a sub class of all Alabama corporations, companies, trusts, persons, and businesses of any type and/or formation who are current or former owners and/or lessees of, or that otherwise acquired, *for dealer purposes or for the purpose of otherwise selling*, a "Defeat Device Vehicle." Defeat Device Vehicles include, without limitation: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3 and any other vehicle powered by Volkswagen's 2.0 liter four-cylinder engine (the "Alabama Dealer Class").

Plaintiffs Warren Truck and Trailer Incorporated and Plaintiffs Warren Manufacturing Incorporated seek to represent a sub class of all Alabama corporations, companies, trusts, persons, and businesses of any type and/or formation who are current or former owners and/or lessees of, or that otherwise acquired, a "Defeat Device Vehicle." Defeat Device Vehicles include, without limitation: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3 and any other vehicle powered by Volkswagen's 2.0 liter four-cylinder engine (the "Alabama Class").

Plaintiff Warren Incorporated, seeks to represent a sub class of all Mississippi corporations, companies, trusts, persons, and businesses of any type and/or formation who are current or former owners and/or lessees of, or that otherwise acquired, a "Defeat Device Vehicle." Defeat Device Vehicles include, without limitation: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3 and any other vehicle powered by Volkswagen's 2.0 liter four-cylinder engine (the "Mississippi Class").

Plaintiff Warren Truck and Trailer LLC, seeks to represent a sub class of all Texas corporations, companies, trusts, persons, and businesses of any type and/or formation who are current or former owners and/or lessees of, or that otherwise acquired, a "Defeat Device Vehicle." Defeat Device Vehicles include, without limitation: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3 and any other vehicle powered by Volkswagen's 2.0 liter four-cylinder engine (the "Texas Class").

Plaintiffs, and each of them together and separately, seek to represent all persons or entities in the United States who are current or former owners and/or lessees of, or that otherwise acquired, a "Defeat Device Vehicle." Defeat Device Vehicles include, without limitation: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3 or any other care that is powered by Volkswagen's 2.0 liter four-cylinder engine (the "U.S. Class")(also, collectively with the Fleet Class, the

Dealer Class, the Alabama Dealer Class, the Alabama Class, the Mississippi Class, and the Texas Class, the "Class" or "Classes").

.

61.     Excluded from the Classes are individuals who have personal injury claims resulting from the "defeat device" in the CleanDiesel system. Also excluded from the Classes are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Classes; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Classes definition based upon information learned through discovery.

62.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

63.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**1.   Numerosity: Federal Rule of Civil Procedure 23(a)(1).**

64.     The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are not less than hundreds of thousands of members of the Classes, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Volkswagen's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

**2.   Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**

65.     This action involves common questions of law and fact, which predominate over

any questions affecting individual Class members, including, without limitation:

(a)  Whether Volkswagen engaged in the conduct alleged herein;

(b)      Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Defeat Device Vehicles into the stream of commerce in the United States;

(c)      Whether the CleanDiesel engine system in the Defeat Device Vehicles contains a defect in that it does not comply with EPA requirements;

(d)      Whether the CleanDiesel engine systems in Defeat Device Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Defeat Device Vehicles;

(e)      Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

(f)      Whether Volkswagen designed, manufactured, marketed, and distributed Defeat Device Vehicles with a "defeat device";

(g)      Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

(h)      Whether Plaintiffs and the other Class members overpaid for their Defeat Device Vehicles;

(i)      Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

(j)      Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

### 3.   Typicality: Federal Rule of Civil Procedure 23(a)(3).

66.     Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

### 4.   Adequacy: Federal Rule of Civil Procedure 23(a)(4).

67.     Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

### 5.   Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).

68.     Volkswagen has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

### 6.   Superiority: Federal Rule of Civil Procedure 23(b)(3).

69.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for members of the Class to individually seek redress for Volkswagen's wrongful conduct.

70.     Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and

increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## IX.   CAUSES OF ACTION

### A.  Claims Asserted on Behalf of the Class

### COUNT I
### Fraud by Concealment
### (Common Law)

71.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

72.     Plaintiffs bring this claim on behalf of the Classes.

73.     Volkswagen intentionally concealed and suppressed material facts concerning the quality and character of the Defeat Device Vehicles. As alleged in this Complaint, Volkswagen engaged in deception to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutants, which contributes to the creation of ozone and smog.

74.     The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Defendant's intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret deception resulted in noxious emissions from these vehicles at 40 times applicable standards.

75.     Plaintiffs and Class members reasonably relied upon Volkswagen's false representations which were made to Plaintiffs and class members. They had no way of knowing

that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

76. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.

77. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its deception to regulators or consumers, including Plaintiffs and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable laws and regulations.

78. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Defeat Device Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

79. Volkswagen had a duty to disclose the emissions deception it engaged in with respect to the vehicles at issue because knowledge of the deception and its details were known

22

and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its deception, and because Volkswagen knew the facts were unknown to or reasonably discoverable by Plaintiffs or Class members.

80.     Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions deception, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.

81.     Having volunteered to provide information to Plaintiffs and the Class, Volkswagen had the duty to disclose the entire truth. These omitted and concealed facts were material because they directly affect the value of the Defeat Device Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiffs and Class members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had thoroughly subverted the testing process.

82.     Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which

perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

83.     On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions deception.

84.     Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

85.     Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damages because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's emissions deceptions with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would

have paid less for their vehicles or would not have purchased or leased them at all.

86.     The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Defeat Device Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

87.     Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

88.     Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

89.     Plaintiffs plead this count pursuant to the law of Virginia, where Volkswagen has its American headquarters, on behalf of all members of the Classes.

90.     Alternatively, Plaintiffs also plead this count pursuant to the law of Alabama, where Warren Manufacturing Incorporated and Warren Truck and Trailer Incorporated are organized, on behalf of all members of the Alabama Dealer Class and the Alabama Class.

91.     Alternatively, Plaintiffs also plead this count pursuant to the law of Texas, where Warren Truck and Trailer LLC purchased and used its Jetta, on behalf of all members of the Texas Class.

92.     Alternatively, Plaintiffs also plead this count pursuant to the law of Mississippi, where Warren Incorporated is organized, on behalf of all members of the Mississippi Class.

93.     Alternatively, Plaintiffs may allege sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the laws of states other than the aforementioned states.

## COUNT II
## Breach of Contract

94.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

95.     Plaintiffs bring this Count on behalf of the Classes.

96.     Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Defeat Device Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Defeat Device Vehicles, would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and the "defeat device." Accordingly, Plaintiffs and the other Class members overpaid for their Defeat Device Vehicles and did not receive the benefit of their bargain.

97.     Each and every sale or lease of a Defeat Device Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiffs and the other Class members defective Defeat Device Vehicles and by misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design, including information known to Volkswagen rendering each Defeat Device Vehicle less safe and emissions compliant, and thus less valuable, than vehicles not equipped with

CleanDiesel engine systems and "defeat devices."

98.     As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and the Classes have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

99.     Plaintiffs plead this count pursuant to the law of Virginia, where Volkswagen has its American headquarters, on behalf of all members of the Classes.

100.    Alternatively, Plaintiffs also plead this count pursuant to the law of Alabama, where Warren Manufacturing Incorporated and Warren Truck and Trailer Incorporated are organized, on behalf of all members of the Alabama Dealer Class and the Alabama Class.

101.    Alternatively, Plaintiffs also plead this count pursuant to the law of Texas, where Warren Truck and Trailer LLC purchased and used its Jetta, on behalf of all members of the Texas Class.

102.    Alternatively, Plaintiffs also plead this count pursuant to the law of Mississippi, where Warren Incorporated is organized, on behalf of all members of the Mississippi Class.

103.    Alternatively, Plaintiffs may allege sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the laws of states other than the aforementioned states.

## COUNT III
## Breach of Express Warranty

104.    Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

105.    Plaintiffs bring a cause of action against Defendant for breach of express warranty on behalf of themselves and the Classes.

106.    Defendant made numerous representations, descriptions, and promises to Plaintiffs and Class members regarding the performance and emission controls of its diesel vehicles.

107.    Defendant, however, knew or should have known that its representations, descriptions, and promises were false. Defendant was aware that it had installed defeat devices in the vehicles it sold to Plaintiffs and Class members.

108.    Plaintiffs and Class members reasonably relied on Volkswagen's representations in purchasing "clean" diesel vehicles. Those vehicles, however, did not perform as was warranted. Unbeknownst to Plaintiffs, those vehicles included devices that caused their emission reduction systems to perform at levels worse than advertised. Those devices are defects. Accordingly, Volkswagen breached its express warranty by providing a product containing defects that were never disclosed to the Plaintiffs and Class members.

109.    As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiffs and Class members suffered significant damages and seek the relief described below.

110.    Plaintiffs plead this count pursuant to the law of Virginia, where Volkswagen has its American headquarters, on behalf of all members of the Classes.

111.    Alternatively, Plaintiffs also plead this count pursuant to the law of Alabama, where Warren Manufacturing Incorporated and Warren Truck and Trailer Incorporated are organized, on behalf of all members of the Alabama Dealer Class and the Alabama Class.

112.    Alternatively, Plaintiffs also plead this count pursuant to the law of Texas, where Warren Truck and Trailer LLC purchased and used its Jetta, on behalf of all members of the Texas Class.

28

113.    Alternatively, Plaintiffs also plead this count pursuant to the law of Mississippi, where Warren Incorporated is organized, on behalf of all members of the Mississippi Class.

114.    Alternatively, Plaintiffs may allege sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the laws of states other than the aforementioned states.

## COUNT IV
### Breach of Implied Warranty

115.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

116.    Plaintiffs bring this cause of action against Volkswagen for breach of implied warranty on behalf of themselves and the Classes.

117.    Volkswagen made numerous representations, descriptions, and promises to Plaintiffs and Class members regarding the functionality of Volkswagen's "clean" diesel technology.

118.    Plaintiffs and Class members reasonably relied on Volkswagen's representations in purchasing the Defeat Device vehicles.

119.    As set forth throughout this Complaint, Volkswagen knew that its representations, descriptions and promises regarding its diesel engines were false.

120.    When Plaintiffs and Class members purchased Volkswagen's diesel vehicles, they did not conform to the promises or affirmations of fact made in Volkswagen's promotional materials, including that the vehicles were designed to meet the most demanding environmental standards. Instead, as alleged above, those vehicles were designed to cheat those standards, and the vehicles emitted far higher levels of pollution than promised.

121.    Accordingly, the Defeat Device Vehicles failed to conform to Volkswagen's

implied warranty regarding their functionality.

122.    As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiffs and Class members suffered significant injury when Volkswagen sold them cars that, it is now clear, are worth far less than the price Plaintiffs and Class members paid for them. Accordingly, Plaintiffs and the Class seek the relief described below.

123.    Plaintiffs plead this count pursuant to the law of Virginia, where Volkswagen has its American headquarters, on behalf of all members of the Classes.

124.    Alternatively, Plaintiffs also plead this count pursuant to the law of Alabama, where Warren Manufacturing Incorporated and Warren Truck and Trailer Incorporated are organized, on behalf of all members of the Alabama Dealer Class and the Alabama Class.

125.    Alternatively, Plaintiffs also plead this count pursuant to the law of Texas, where Warren Truck and Trailer LLC purchased and used its Jetta, on behalf of all members of the Texas Class.

126.    Alternatively, Plaintiffs also plead this count pursuant to the law of Mississippi, where Warren Incorporated is organized, on behalf of all members of the Mississippi Class.

127.    Alternatively, Plaintiffs may allege sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the laws of states other than the aforementioned states.

**COUNT V**
**Magnuson - Moss Act (15 U.S.C. §§ 2301, *et seq*.)—Implied Warranty**

128.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

129.    Plaintiffs assert this cause of action on behalf of themselves and the other

members of the Classes.

130.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 2301(3).

131.    Volkswagen's Defeat Device Vehicles are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

132.    Plaintiffs and Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3)

133.    Volkswagen is a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).

134.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

135.    Volkswagen provided Plaintiffs and Class members with "implied warranties," as that term is defined in 15 U.S.C. § 2301(7).

136.    Volkswagen has breached these implied warranties as described in more detail above. Without limitation, Volkswagen's Defeat Device vehicles are defective, as described above, which resulted in the problems and failures also described above.

137.    By Volkswagen's conduct as described herein, including Volkswagen's knowledge of the defects inherent in the vehicles and its action, and inaction, in the face of the knowledge, Volkswagen has failed to comply with its obligations under its written and implied promises, warranties, and representations.

138.    In its capacity as a warrantor, and by the conduct described herein, any attempts by Volkswagen to limit the implied warranties in a manner that would exclude coverage of the defective software and systems is unconscionable and any such effort to disclaim, or otherwise

limit, liability for the defective the software and supporting systems is null and void.

139.    All jurisdictional prerequisites have been satisfied.

140.    Plaintiffs and members of the Class are in privity with Volkswagen in that they purchased the software from Volkswagen or its agents.

141.    As a result of Volkswagen's breach of implied warranties, Plaintiffs and the Nationwide Class members are entitled to revoke their acceptance of the vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. §2310.

**COUNT VI**
**Unjust Enrichment**

142.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

143.    Plaintiffs bring this count on behalf of themselves and, where applicable, the Classes.

144.    Plaintiffs and members of the Class conferred a benefit on Defendant by, *inter alia*, using (and paying for) its vehicles.

145.    Defendant has retained this benefit, and know of and appreciate this benefit.

146.    Defendant was and continues to be unjustly enriched at the expense of Plaintiffs and Class members.

147.    Defendant should be required to disgorge this unjust enrichment.

148.    Plaintiffs plead this count pursuant to the law of Virginia, where Volkswagen has its American headquarters, on behalf of all members of the Classes.

149.    Alternatively, Plaintiffs also plead this count pursuant to the law of Alabama, where Warren Manufacturing Incorporated and Warren Truck and Trailer Incorporated are organized, on behalf of all members of the Alabama Dealer Class and the Alabama Class.

150.     Alternatively, Plaintiffs also plead this count pursuant to the law of Texas, where Warren Truck and Trailer LLC purchased and used its Jetta, on behalf of all members of the Texas Class.

151.     Alternatively, Plaintiffs also plead this count pursuant to the law of Mississippi, where Warren Incorporated is organized, on behalf of all members of the Mississippi Class.

152.     Alternatively, Plaintiffs may allege sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the laws of states other than the aforementioned states.

**B.  State-Specific Claims**

**COUNT VII**
**Violation of Alabama's Deceptive Trade Practices Act**
**(Ala. Code §8-19-5, *et seq.*)**

153.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

154.     Plaintiffs bring this Count on behalf of Alabama members of the Classes and the Alabama Dealer Class and Alabama Class.

155.     Defendants violated the Alabama Deceptive Trade Practices Act, Ala. Code §8-19-5, ("Alabama DTPA") and the substantially similar statutes of other states in which it conducts business, by selling the Defeat Device Vehicles.

156.     Pursuant to the Alabama DTPA, it is unlawful to:

> (2) Caus[e] confusion or misunderstanding as to the source sponsorship, approval, or certification of goods or services
>
> (7) Represent[] that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of

another.

(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce

Ala. Code §8-9-15

157.    The Defeat Device Vehicles are "goods" as defined in Alabama DTPA.

158.    As alleged above, Volkswagen made numerous representations concerning the benefits, efficiency, performance and safety features of CleanDiesel engine systems and the Defeat Device Vehicles that were misleading.

159.    In purchasing or leasing the Defeat Device Vehicles, Plaintiffs and the other Class members were deceived by Volkswagen's failure to disclose that the Defeat Device Vehicles were equipped with defective CleanDiesel engine systems that failed EPA emissions standards.

160.    Volkswagen's conduct, as described hereinabove, was and is in violation of the Alabama DTPA. Volkswagen's conduct violates at least the following enumerated Alabama DTPA provisions:

A.  Ala. Code §8-9-15(2) "Causing confusion or misunderstanding as to the source sponsorship, approval, or certification of goods or services"

B.  Ala. Code §8-9-15(7) "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another"

C.  Ala. Code §8-9-15(27) "Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce"

161.    The Alabama Plaintiffs, the Alabama members of the Classes, and the Alabama

Dealer Class and Alabama Class members have suffered injury in fact and actual damages resulting from Volkswagen's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Defeat Device Vehicles and because they stand to pay additional fuel costs if and when their Defeat Device Vehicles are made to comply with emissions standards.

162.    Volkswagen knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the CleanDiesel engine systems, and that the Defeat Device Vehicles were not suitable for their intended use.

163.    The facts concealed and omitted by Volkswagen to the Alabama Plaintiffs, the Alabama members of the Classes, and the Alabama Dealer Class and Alabama Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Defeat Device Vehicles or pay a lower price. Had the Alabama Plaintiffs, the Alabama members of the Classes. and the Alabama Dealer Class and Alabama Class members known about the defective nature of the Defeat Device Vehicles, they would not have purchased or leased the Defeat Device Vehicles or would not have paid the prices they paid.

164.    The Alabama Plaintiffs, the Alabama members of the Classes, and the Alabama Dealer Class' and Alabama Class' injuries were proximately caused by Volkswagen's fraudulent and deceptive business practices.

165.    Therefore, the Alabama Plaintiffs, the Alabama members of the Classes, and the Alabama Dealer Class and Alabama Class are entitled to equitable and monetary relief under the Alabama DTPA.

**COUNT VIII**
**Violations of the Texas Deceptive Trade Practices-Consumer Protection Act,**
**(V.T.C.A., Bus. & C. § 17.50. Relief for Consumers)**

166.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

167.    Plaintiffs assert this Count on behalf of the Texas members of the Classes and the members of the Texas Class.

168.    At all relevant times, Defendant engaged in "trade" and/or "commerce" within the meaning of V.T.C.A., Bus. & C. § 17.50.

169.    V.T.C.A., Bus. & C. § 17.50 permits a consumer action against a Defendant for economic damages when it has:

      (a)  Used or employed a false, misleading, or deceptive act or practice that is:

         i.   enumerated in Section 17.46 (below), and

         ii.  is relied upon by the consumer;

      (b)  Breached an express or implied warranty; or

      (c)  Acted in an unconscionable action or course of action.

170.    Defendant made uniform representations that its diesel vehicles were of a particular standard, quality, or grade when they were and are not, and that they would perform as represented when they did not, and, as set forth above, made false and/or misleading statements regarding the capacity and characteristics of Defeat Device vehicles that, as set forth above, were unfair or deceptive, had and continue to have the capacity to deceive the public, cause injury to Texas Plaintiffs and were made in violation of V.T.C.A., Bus. & C. § 17.50.

171.    In its communications with and disclosures to Texas members of the Classes, Defendant intentionally concealed and/or failed to disclose that the Defeat Device Vehicles

36

included a software program designed to cheat emissions testing, and that the true emissions of those vehicles were far higher than claimed.  Those omissions were unfair or deceptive, had and continue to have the capacity to deceive the public, cause injury to Texans, and were made in clear violation of the V.T.C.A., Bus. & C. § 17.50.

172.   Defendant had exclusive knowledge that the Defeat Device Vehicles had and have the defects set forth above, facts unknown to Texas members of the Classes. Defendant's exclusive knowledge of these material facts gave rise to a duty to disclose such facts, which it failed to perform.

173.   Texas members of the Classes justifiably acted or relied to their detriment on Defendant's affirmative representations and the concealed and/or non-disclosed facts as evidenced by their purchase and/or use of the defective Defeat Device Vehicles.

174.   Had Defendant disclosed all material information regarding the defeat devices, Texas members of the Class would not have purchased and used the Defeat Device Vehicles.

175.   By the conduct described herein, Defendant unconscionably engaged in unfair methods of competition and/or unfair or deceptive act or practices in the conduct of business, trade, or commerce.

176.   As a direct and proximate result of Defendant's violations of the forgoing law, the Texas members of the Class have been injured.

177.   As described in above sections, Defendants breached both express and implied warranties to the Texas Plaintiff and Class members.

178.   The Texas members of the Class have been damaged and are entitled to all of the damages, remedies, fees, and costs available under the V.T.C.A., Bus. & C. § 17.50.

**COUNT IX**
**Violation of the Texas Deceptive Trade Practices-Consumer Protection Act**
**(V.T.C.A., Bus. & C. § 17.46. Deceptive Trade Practices Unlawful "Texas DTPA")**

179.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

180.   Plaintiffs assert this Count on behalf of the Texas members of the Classes and the members of the Texas Class.

181.   Pursuant to the Texas DTPA, it is unlawful to:

    (2) "Caus[e] confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services"

    (5)  "Represent[] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not"

    (7)  "Represent[] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"

§17.46.

182.   Plaintiffs, Texas members of the Classes, and the members of the Texas Class are "persons" as defined by § 17.45(3).

183.   Defendant is engaged in trade and commerce as defined by 17.45(6) because it extensively markets and sells its products within Texas.

184.   Defendant's representations, as alleged above, were and are material to a reasonable consumer and are likely to affect consumer behavior and conduct.

185.   Defendant's act and practices offended public policy and violate numerous state and federal laws, including but not limited to the Clean Air Act.

186.     Defendant's intentional deception of consumers and regulators is and was immoral, unethical, oppressive, and unscrupulous.

187.     Defendant's conduct has caused and continues to cause substantial injury to the Texas Plaintiff, Texas members of the Classes, the Texas Class members, and consumers, and others because, as alleged above, consumers paid a premium for Defeat Device Vehicles based on representations about their low emissions, fuel efficiency, and performance. That injury is not outweighed by any countervailing public policy that could justify Defendant's deceptive practices.

188.     Because the Texas Plaintiff, Texas members of the Classes, the Texas Class members, and consumers reasonably relied on Defendant's misrepresentations about the Defeat Device Vehicles, they could not have reasonably avoided that injury.

189.     Defendant's conduct has not resulted in any benefit to consumers or competition.

190.     Defendant's unfair and deceptive practices direct, foreseeably, and proximately caused the Texas Plaintiff, Texas members of the Classes, and the Texas Class members an ascertainable loss because those consumers paid a premium for what they thought were high-performance, low-emission vehicles.

191.     Volkswagen's conduct, as described hereinabove, was and is in violation of the Texas DTPA. Volkswagen's conduct violates at least the following enumerated Texas DTPA provisions:

>    (2) "Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services"

>    (5) "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person

has a sponsorship, approval, status, affiliation, or connection which he does not"

(7) "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"

192.     The Texas Plaintiff, Texas members of the Classes, and the Texas Class members are entitled to damages and other relief, as described below.

## X. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Classes respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

A.     Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel for the Classes;

B.     An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.     Injunctive relief in the form of a recall or free replacement program;

D.     Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

E.     Revocation of acceptance;

F.     Damages under the Magnuson-Moss Warranty Act;

G.     For treble and/or punitive damages as permitted by applicable laws;

H.     An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

I.     An award of costs and attorneys' fees; and

J.     Such other or further relief as may be appropriate.

## XI. DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial.

DATED this 21st day of September, 2015.

/s/ Taylor Bartlett

W. LEWIS GARRISON, JR.,
      lewis@hgdlawfirm.com
CHRISTOPHER HOOD,
      chood@hgdlawfirm.com
TAYLOR C. BARTLETT,
      taylor@hgdlawfirm.com
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, AL 35203
Tel: 205-326-3336
Fax: 205-326-3332

JAMES F. MCDONOUGH, III.
GA Bar No.: 117088
      jmcdonough@hgdlawfirm.com
      *PHV forthcoming*
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Tel: 404-996-0869
Fax: 205-326-3332

*Attorney for Plaintiffs and all others similarly situated*